USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/1/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

PRINSEMA COLBOURNE, as Administratrix of
The Estate of Rosita Colbourne, Deceased,

                                    Plaintiff,                      **16-CV-5606 (SN)**
                                                                       **19-CV-1757 (SN)**

                   -against-

                                                                    **OPINION AND ORDER**

THE UNITED STATES OF AMERICA,

                                    Defendant.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

       Pursuant to the Federal Tort Claims Act (the "FTCA"), Plaintiff Prinsema Colbourne brings this wrongful death action against the United States of America, which was the owner and operator of a dental clinic that allegedly failed to diagnose oral cancer in the gingiva of Plaintiff's mother. The Court held a bench trial over four days from May 28, 2019, to May 31, 2019. During trial, Plaintiff objected to some of Defendant's expert testimony, arguing that it was not properly disclosed pursuant to Fed. R. Civ. P. 26. The parties accordingly submitted briefing during trial. See ECF Nos. 94-95. The Court deferred ruling on these objections and instructed the parties to file post-trial briefing. Plaintiff accordingly filed her motion, which seeks to exclude: (1) Dr. Philipone's and Dr. Friedman's testimony regarding refusal of radiation therapy, arguing that it was allegedly not disclosed pursuant to Fed. R. Civ. P. 26 and is unreliable under Fed. R. Evid. 702; (2) Dr. Friedman's testimony regarding pathological margins, arguing that it was not disclosed pursuant to Fed. R. Civ. P. 26; and (3) the duplication of some of Dr. Friedman's and Dr. Philipone's expert testimony. See Pl.'s Mem. at 1 (ECF No. 101). Defendant opposes the motion. See Def.'s Mem. at 1 (ECF No. 106).

For the reasons discussed below, the Court grants Plaintiff's motion to strike Dr. Friedman's testimony regarding refusal of radiation therapy. The remainder of the motion is denied.

I.  **Testimony Regarding Refusal of Radiation Therapy**

After her February 14, 2014 surgery, Rosita Colbourne ("Colbourne") did not follow her doctor's recommendation of undergoing radiation therapy. See Joint Pretrial Order ("JPTO") Stipulated Facts ¶¶ 12-15 (ECF No. 90). During trial, two of Defendants' experts—Dr. Elizabeth Philipone and Dr. Joel Friedman—gave testimony relating to radiation therapy generally and her refusal specifically. Plaintiff argues that this testimony should be excluded from the Court's consideration, arguing that it was not properly disclosed pursuant to Fed. R. Civ. P. 26(a)(2)(B) or, in the alternative, that it is inadmissible expert testimony under Fed. R. Evid. 702.

A. **Disclosure in the Reports**

Rule 26(a)(2)(B) requires parties to provide during discovery a written report, signed by the expert, which includes "(i) a complete statement of all opinions the witness will express and the basis and reasons for them [and] (ii) the data or other information considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). This "requirement is intended to ensure adequate trial preparation, including the opportunity for efficient follow-up discovery through deposition, if necessary." Lava Trading, Inc. v. Hartford Fire Ins. Co., No. 03-CV-7037 (PKC), 2005 WL 4684238, at *7 (S.D.N.Y. Apr. 11, 2005), adopted by 2005 WL 4684238, at *1 (S.D.N.Y. Apr. 11, 2005). For that reason, inadequately disclosed expert testimony may be excluded at trial. See Fed. R. Civ. P. 37(c). The Court finds that Dr. Philipone's testimony was adequately disclosed but that Dr. Friedman's was not.

2

Plaintiff's frustration with Dr. Philipone's disclosure is understandable. But the opinion expressed in her report is entirely consistent with her trial testimony. In the report, she said:

> I believe with reasonable medical certainty that any delay in diagnosis was not the cause of Ms. Colbourne's death. . . . Evidence suggests that demonstration of perinueral invasion in OSCC should impact adjuvant treatment decisions and surgical management of this disease.

ECF No. 101-2 at 5. That paragraph is arguably imprecise—stating that perineural invasion impacts treatment decisions is obviously different from saying perineural invasion should be treated with adjuvant therapy—but the import is clear. By juxtaposing these two statements—that delay in diagnosis did not cause Colbourne's death, and that perineural invasion should influence the decision to treat a patient with adjuvant therapy—she clearly was gesturing towards the conclusion that the refusal of radiation therapy negatively affected Colbourne's prognosis.

Indeed, that was her testimony at trial regarding radiation therapy. First, she testified that the only treatments for perineural invasion are adjuvant therapy such as radiation therapy, chemotherapy, or additional surgery. See Philipone Tr. 392:22-393:10, 399:9-18. The basis of that knowledge came from her position as a pathologist, which requires her to review reports from treating clinicians and to see patients suffering from side effects of radiation therapy. See Philipone Tr. 393:2-10. She further testified that based on her review of the medical records, she found that Colbourne had perineural invasion, that she was recommended radiation therapy, and that she did not have radiation therapy following surgery in February 2014 and December 2015. Tr. 402:25-403:13, Tr. 431:11-15. Based on that review of her records and her knowledge that the only treatments for perineural invasion are adjuvant therapy, she testified that refusal of adjuvant therapy could worsen a patient's prognosis. Tr. 399:19-21. Later, on cross-examination, she stated the ultimate conclusion outright: "I think it would have worsened her survival if she

didn't follow the recommendations." Tr. 491:15-16. This was the sum total of the opinion that she offered regarding radiation therapy.

Plaintiff rightfully points out that the ultimate conclusion was hidden in Dr. Philipone's report. But this does not warrant exclusion because Plaintiff has suffered no prejudice. That Plaintiff suffered no prejudice is clear from the context of trial. In theory, Defendant's expert could have offered a strong form or weak form of this testimony. The strong form would have been that scientific studies show that Colbourne would have had a strong prognosis if she had not refused radiation therapy. The weak form would have been that the refusal of radiation therapy had an unspecified negative impact on her prognosis. Dr. Philipone's trial testimony consisted of the weak form. The report is consistent with that form of the testimony, which allowed Plaintiff to pin down Dr. Philipone's opinion during her deposition. See ECF No. 95 at 4. As a result, Plaintiff was able to cross-examine Dr. Philipone rather effectively, demonstrating to the Court that Dr. Philipone's knowledge is limited to the fact that Colbourne did not follow the recommended treatment that is the standard of care for perineural invasion. See Tr. 491:17-20 ("Q. And can you tell me . . . how you think it would have helped her. A. I'm not a radiation oncologist. I can't opine on that. But I can opine that that's the recommendation."). Thus, the Court sees no prejudice arising from the disclosure of this testimony, and it will not be excluded under Fed. R. Civ. P. 37(c).

The situation is different for Dr. Friedman's testimony. Nowhere in his report does he refer to radiation therapy, adjuvant therapy, or any other post-surgery treatment options. See generally ECF No. 101-1. He did testify that he does not believe that any delay in diagnosis caused the second tumor, but that opinion is not based on the failure to implement adjuvant therapy. See ECF No. 101-1 at 2-3 ("I am also of the opinion that the OSCC of the left maxilla

was not caused by any delay in diagnosis. An experienced team of surgeons discovered the left maxillary OSCC only after it reached a visible and palpable size and thereafter . . . [they] cared [for] her."). At most, this opinion suggests that Dr. Friedman believes that her physicians should have found the alleged recurrence earlier. It says nothing about Colbourne's decision not to undergo radiation therapy. Plaintiff was, therefore, not on notice that Dr. Friedman would offer an opinion regarding the effect, if any, of the denial of radiation therapy. The Court will accordingly not consider Dr. Friedman's opinion on that subject.

### B. Adequacy under Rule 702

An expert who is "qualified . . . by knowledge, skill, experience, training, or education" may testify if the testimony would be helpful to the trier of fact, is "based on sufficient facts or data," is "the product of reliable principles and methods," and the expert has reliably applied the facts of the case. Fed. R. Evid. 702. Plaintiff objects that Dr. Philipone is not qualified under this standard to offer testimony relating to the denial of radiation therapy. The Court disagrees.

If Dr. Philipone had offered the strong form of the opinion—i.e., that radiation therapy is effective and Colbourne would have had a strong prognosis if she had undergone radiation therapy—then Plaintiff's argument would be persuasive. But Dr. Philipone did not offer the strong form. Indeed, she explicitly acknowledged that she is not an expert who can quantify the effect, if any, of radiation therapy. See Tr. 491:17-20. Instead, her testimony was limited to the fact that adjuvant therapy and surgery are the only options for treating perineural invasion, and therefore she believes that the failure to undergo radiation therapy worsened Colbourne's prognosis. See id. Admittedly, her opinion is not particularly robust. She is, after all, not an oncologist. See id. Rather, her opinion is based exclusively on her personal experience, which has exposed her to the standard and practice of *other doctors'* recommendations. See Tr. 491:20-

5

25 ("I can opine that that's the recommendation. Radiation oncologists, clinicians don't subject patients to radiation if they don't think it's going to benefit them. Radiation has sequelae. We don't subject patients to radiation unless we think there would be the potential to have better survival, less recurrence."). That does not, however, make the testimony inadmissible. Rather, it goes to the weight of the evidence. That is particularly true in the context of a bench trial. See Tiffany (NJ) Inc. v. eBay, Inc., 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007) (Sullivan, D.J.) ("[I]n the context of a bench trial where there is not a concern for juror confusion or potential prejudice, the court has considerable discretion in admitting the proffered testimony at the trial and then deciding after the evidence is presented whether it deserves to be credited by meeting the requirements of Daubert and its progeny.") (citation omitted); see also State of New York v. Solvent Chem. Co., No. 83-CV-1401C (JTC), 2006 WL 2640647, at *1-2 (W.D.N.Y. Sept. 14, 2006) (collecting cases).

## II. Testimony Regarding a Hypothetical Second Surgery

Dr. Friedman testified that Colbourne should have had a second surgery following her first hemimaxillectomy. Plaintiff objects that this testimony was not disclosed during discovery pursuant to Rule 26(a)(2)(B). Because the objection was not raised before or during trial, the Court does not entertain the objection.

During trial, Dr. Friedman testified that when excising a tumor, surgeons seek to excise an additional margin of healthy tissue to ensure that all the cancerous tissue is removed. See Tr. 542:17-24. He further testified that there are two margins: the clinical margin, which is the amount that the surgeon chooses to excise based on observations before and during surgery, and the pathological margin, which is a definitive determination of how close cancerous tissue is to the edge of the excised tissue based on post-operative testing. See Tr. 543:12-544:12. Dr.

Friedman testified that the standard of care is to obtain a pathological margin of at least a centimeter and, failing that, the patient needs to undergo either adjuvant therapy or additional surgery. See Tr. 545:19-546:18. Because the pathological margin following Colbourne's surgery was only two millimeters, and because Colbourne declined radiation therapy, he then testified that she should have had additional surgery. See Tr. 546:3-18.

Admittedly, this testimony is completely absent from Dr. Friedman's report. Indeed, the only reference to margins in his report suggests that the pathological margin was appropriate. See ECF No. 101-1 at 1 ("The pathology report at the first surgical intervention exhibited no cancer in the margins and surgery of this type requires extension beyond the borders of the tumor to decrease the possibility of spread.").[1] But Plaintiff did not object to this testimony during trial. Instead, Plaintiff only objected to Dr. Friedman's opinions regarding *radiation* therapy, not the pathological margins and necessity for a second surgery. See Tr. 546:19-547:6. Thus, Plaintiff waived this objection and may not raise it now. See In re Red Rock Servs. Co., LLC, 522 B.R. 551, 575 (E.D. Pa. 2014) (finding that failure to raise objection during a bench trial constituted a waiver of the objection) (citation omitted).

## III. Duplicative Expert Testimony

Finally, Plaintiff argues that Defendant's experts offered impermissibly duplicative testimony. Plaintiff is correct that, in some circumstances, duplicative expert testimony should be excluded as excessively cumulative and potentially prejudicial under Fed. R. Evid. 403. See, e.g.,

---

[1] Defendant argues that Dr. Friedman discussed how margins affect the scope of surgery during his deposition. See ECF No. 106. That argument elides the important distinction between two issues. It was clear in his report that Dr. Friedman believed that a more limited surgery would not have been possible because of the necessary clinical margins. See ECF No. 101-1 at 1. Plaintiff appropriately explored the issue in Dr. Friedman's deposition. See ECF No. 101 at 3. That is different from Dr. Friedman's testimony regarding the pathological margin, which bears on the cause of the second tumor. By opining for the first time that Colbourne's doctors should have operated a second time in order to correct the deficient pathological margin, Dr. Friedman was undisputedly testifying beyond the scope of his report.

7

Cash v. United States, No. 15-CV-518 (JAW), 2016 WL 6267952, at *4 (D. Maine Oct. 6, 2016) ("To proceed otherwise would invite parties to designate multiple expert witnesses for each issue thereby potentially resulting in trials based on an assessment of not only the quality of the respective experts' testimony, but on the quantity of experts testifying on each issue."). But there is no per se rule that a party may only have one expert on every issue. See Green Construction Co. v. Kansas Power & Light Co., 1 F.3d 1005, 1014 (10th Cir. 1993) (concluding that the district court did not abuse its discretion in admitting cumulative expert testimony); Olson v. Ford Motor Co., 411 F. Supp. 2d 1149, 1157 (D.N.D. 2006) (permitting three expert witnesses to testify about the same subject); Columbia First Bank, FSB v. United States, 58 Fed. Cl. 333, 341 (Fed. Cl. 2003) (allowing two expert witnesses to testify about the same subject). Indeed, it would be impossible to stick to such a bright line rule. Rather, the only question is whether the testimony was impermissible under Rule 403, and the answer here is clearly no. The testimony from these two witnesses only overlapped on a few subjects, and in the context of a bench trial, there is no risk that the Court will be unduly swayed by the quantity (rather than the quality) of expert testimony. This objection is overruled.

## CONCLUSION

The Court denies Plaintiff's post-trial motion to strike portions of Dr. Philipone's and Dr. Friedman's testimony, with one exception. Dr. Friedman's testimony regarding radiation therapy was not appropriately disclosed during discovery. That testimony will be excluded.

**SO ORDERED**.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   August 1, 2019
         New York, New York

8